**H. Farley VINCENT, Appellant,**

v.

**John BRONIS, Appellee.**

**No. 7479.**

Court of Civil Appeals of Texas.

Texarkana.

Feb. 26, 1963.

Rehearing Denied March 26, 1963.

Merritt H. Gibson, Longview, for appellant.

Franklin Jones: Jones, Brian & Jones, Marshall, for appellee.

FANNING, Justice.

H. Farley Vincent sought to probate the purported Will of W. Bronis, deceased, in the county court of Harrison County, Texas. John Bronis, contending that he was the son of W. Bronis under the doctrine of

adoption by estoppel, filed a contest to the probate of the will offered. The county court dismissed the contest on the ground that John Bronis failed to establish adoption by estoppel and therefore failed to establish an interest in the estate of W. Bronis, deceased. John Bronis appealed from the order of the County Court to the District Court of Harrison County, Texas.

The cause was tried in the District Court with the aid of a jury. The record shows that no statutory adoption proceedings were had, and John Bronis relied upon the doctrine of adoption by estoppel. The issues submitted and the jury's answers thereto were as follows:

"SPECIAL ISSUE NO. 1:

"Do you find from a preponderance of the evidence that W. Bronis verbally agreed to adopt John Bronis on or before his marriage to Tessie Bronis?

"Answer 'Yes' or 'no'.

"ANSWER: Yes.

"SPECIAL ISSUE NO. 2:

"Do you find from a preponderance of the evidence that as a result of such agreement, if any, as inquired about in the preceding issue that Tessie Bronis married W. Bronis?

"Answer 'Yes' or 'no'.

"ANSWER: Yes.

"If you have answered Special Issue No. 1 'Yes', and only in that event, answer the following issue; otherwise do not answer same.

"SPECIAL ISSUE NO. 3:

"Do you find from a preponderance of the evidence that after the agreement, if any, inquired about in Issue No. 1, that John Bronis lived in the relationship of son to W. Bronis by conferring upon W. Bronis the benefits of parenthood?

"Answer 'Yes' or 'no'.

"ANSWER: Yes.

"SPECIAL ISSUE NO. 4:

"Do you find from a preponderance of the evidence that Tessie Campbell would not have married Willie Bronis in the absence of an agreement with Willie Bronis that he would adopt John Campbell?

"Answer: 'She would not have married' or, 'she would have married'.

"ANSWER: She would not have married.

"SPECIAL ISSUE NO. 5.

"Do you find from a preponderance of the evidence that Willie Bronis led John Campbell to believe that he had been legally adopted as the heir of the said Willie Bronis, and thereby acquired the services and the affection of the said John Campbell?

"Answer 'Yes' or 'no'.

"ANSWER: yes."

The trial court rendered judgment setting aside the order of the county court dismissing the contest of John Bronis to the purported last Will of W. Bronis and further decreed to the effect among other things that John Bronis was the adopted son of W. Bronis, deceased, under the doctrine of estoppel, and was the sole surviving heir of W. Bronis, deceased, and that the privies of W. Bronis, deceased, were estopped to deny such adoptive status of John Bronis, and that John Bronis was entitled to be heard upon any contest of any purported Will of W. Bronis, deceased, offered for probate. Appellant has appealed.

Appellant's points on appeal present "no evidence" questions.

Tessie Campbell was between 17 and 18 years of age on April 19, 1933, when her son, John Campbell was born. She first met Mr. W. Bronis in Longview, Texas, in 1935. She married Mr. Bronis in 1937 when Mr. Bronis was about 62 years old and when she was about 22 years of age, and when her fatherless son was between

4 and 5 years of age. This marriage continued until March, 1961, when it was dissolved by divorce. Mr. W. Bronis died in September, 1961, when he was about 85 or 86 years old. Mrs. Tessie Bronis married Mr. Karst in January, 1962.

There is evidence of probative force in the record that Mr. W. Bronis prior to marrying Tessie Campbell agreed to adopt John Campbell as his son. In this connection we quote from the testimony of Mrs. Tessie Campbell Bronis Karst (mother of John Bronis) in part as follows:

"Q. When did you and Mr. Bronis begin to court or talk about marriage?

"A. Well, I had been acquainted with Mr. Bronis for possibly two years, I think, or more, but we really didn't court until I went to the hospital. During the time I was in the hospital Mr. Bronis came to the hospital to visit me and brought me flowers, and I was in the hospital quite a while and he came every night while I was in the hospital. And shortly before I was released from the hospital he asked me if I would consider marrying him.

"Q. And, what was your reaction?

"A. Well, I didn't answer at that time, I didn't give him a definite answer until I had got out of the hospital and went to live at Mrs. Porter's; and he was trying to persuade me to marry him, and I finally told him yes probably—oh, I had been out of the hospital five or six days when I told him yes.

"Q. Before you told him yes, did you make any agreement or discussion with him about the status that John would have in the event you married?

"A. Yes, sir, he told me that if I would marry him that he would adopt my son.

"Q. Now, how old was John at that time?

"A. He was—I believe would have been five the following April, we married in November.

"Q. So he would have been four in November of '37, going on five?

"A. Yes, sir.

"Q. Now, did Mr. Bronis make the statement not only to you but to you in the presence of other people that in the event you married him he would adopt John?

"A. Yes, sir, he did. My bed was placed in the living room of Mrs. Porter's home, she had other members of her family there, and they set up a bed in their living room to put me in when I came home from the hospital. And Mr. and Mrs. Porter were there all the time, and one of their daughters, Mrs. Amy Carlisle, was there every day to see me and also to see her parents, and to buy groceries or whatever they have to have from town."

The above quoted testimony of Mrs. Karst was corroborated in material respects by the testimony of Mr. and Mrs. Porter and Mrs. Carlisle. Also on cross examination Mrs. Karst testified in part as follows:

"Q. You didn't marry him so John would inherit Mr. Bronis' property?

"A. I figured that if his father had anything that John would inherit it, yes, but at the time we married Mr. Bronis had no property. He had a refrigerator, a coupe automobile and about four or five hundred dollars worth of second hand pipe fittings, and a place of business that cost us $16.00 a month.

"Q. So, you were willing to marry Mr. Bronis even without any

prospect of inheriting the property, weren't you?

"A. Mr. Bronis still wouldn't have had any property if we hadn't married.

"Q. I said you were willing to marry Mr. Bronis—

"A. If I hadn't been willing to marry Mr. Bronis I wouldn't have married him.

"Q. And without the prospect of John inheriting any property?

"A. Mr. Bronis had already tole me then and still said that the place would make John and I a living if anything happened to him. Mr. Bronis had also been sick when he and I married, he told me that he had had a heart attack. I never consulted the doctor about it but Mr. Bronis told me that he had had a heart attack, and that he didn't have very much, but that if anything happened to him that he thought that little place of business would provide for John and I. So that's * * *".

There is also evidence of probative force to show that from the time that John Bronis went into the home of W. Bronis until the time that W. Bronis died that John gave him all the benefits of parenthood. He went to school and college under the name of John Bronis. W. Bronis signed school report cards by John Bronis, and school census reports. Mr. Bronis also signed income tax returns wherein he listed John Bronis as a son and as an exemption. There is evidence of probative force in the record to show that W. Bronis referred to John Bronis as his son and loved him and treated him as a son. John Bronis married and became the father of children that Mr. W. Bronis referred to as his grandchildren.

 After carefully considering the record in this cause we hold that there was evidence of probative force to support the findings of the jury and the judgment rendered by the trial court. Jones et al. v. Guy et al., 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77.

The judgment of the trial court is affirmed.